**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

SAMSON TUG AND BARGE COMPANY,
INC., an Alaska Corporation,

                                  Plaintiff,

        v.

TIMOTHY J. KOZIOL and BRETT M.
CLARK,

                           Defendants.

Case No. 3:11-cv-00247-SLG

## ORDER DENYING DEFENDANT CLARK'S MOTION TO DISMISS

Before the court at Docket 8 is defendant Brett Clark's Motion to Dismiss.  At Docket 14, plaintiff Samson Tug and Barge ("Samson") opposes.  At Docket 18, Mr. Clark replies.  At Docket 28, Samson surreplies.  Oral argument on the motion was held on March 8, 2012.

## *FACTS AND PROCEDURAL BACKGROUND*

The uncontroverted facts are as follows: Samson is an Alaska corporation transporting freight and other materials within Alaska and to Seattle by tug and barge.[1]  General Environmental Management, Inc. is a Nevada corporation ("GEM Nevada").  In 2008 and 2009, GEM Delaware was a Delaware corporation and the primary operating subsidiary of GEM Nevada.[2]  At all relevant times, defendant Timothy Koziol was the Chief Executive Officer (CEO) and Mr. Clark the Chief Financial Officer (CFO) of GEM

---

[1] Compl. at 2, Ex. A to Notice of Removal (Docket 1).

[2] *Id.* at 2.

Nevada. Both were and are residents of California[3] who have been to Alaska "only once or twice, and never in relation to the subject matter of this lawsuit."[4]

In the fall of 2008, GEM[5] hired Samson to transport contaminated material from Kodiak, Alaska to Seattle, Washington.[6] After transporting the material in late 2008, Samson requested payment from GEM. In early 2009, Samson received some payments on the invoices, but these payments stopped in April 2009.[7] By October 2009, Samson was owed $559,678.43, including interest on the unpaid balance due.[8]

In 2009, Samson's CFO Roslyn Dailey communicated with Mr. Clark about the outstanding balance. At least two of Ms. Dailey's communications were sent on Samson letterhead. That letterhead lists Samson's corporate headquarters address in Sitka, Alaska and includes the slogan "Alaskans Serving Alaskans."[9] On June 30, 2009, Ms. Dailey and Mr. Clark communicated via e-mail to schedule a phone call.[10] In this correspondence, which included a discussion of the time difference between Pacific Standard Time and Alaska Standard Time, Mr. Clark explicitly acknowledged that Ms.

---

[3] *Id.* at 1-2.

[4] Mot. at 2 (Docket 8).

[5] A number of times in the record it is not clear whether the reference is to GEM Nevada or GEM Delaware. In those instances, the term "GEM" has been used.

[6] Compl. at 2.

[7] *Id.* at 3.

[8] *Id.* at 3.

[9] Letter of June 17, 2009, Ex. 8 to Aff. of Roslyn Dailey (Docket 14) [hereinafter Dailey Aff.]; Letter of Sept. 17, 2009, Ex. 15 to Dailey Aff.

[10] E-mails of June 30, 2009, Ex. 11 to Dailey Aff.

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 2 of 30

Dailey was in Sitka, Alaska.[11]

In September 2009, Ms. Dailey indicated that Samson intended to pursue a court action in Washington state court against GEM to recover the amount owed and sent GEM a draft complaint.[12] The caption of the draft complaint identifies Samson as "an Alaskan Corporation." Additionally, the body of that draft complaint describes Samson as "a duly licensed Alaska State Corporation"[13] and specifies that the action arises out of the contract to transport materials from Kodiak to Seattle.[14]

On or about November 6, 2009, GEM Nevada and Samson executed a Settlement Agreement and Release ("Settlement Agreement"), in which GEM Nevada agreed not to dispute that it owed Samson $559,678.43 through November 1, 2009 and agreed to a payment plan to pay off the entire amount due by October 2010.[15] Also in the Settlement Agreement, Samson expressly released GEM Delaware from all liability for the amount due.[16] The Settlement Agreement contained language acknowledging

---

[11] *Id.*

[12] Compl. at 2. *See also* Draft Complaint, Ex. B to Aff. of Brett Clark (Docket 9) [hereinafter Clark Aff.].

[13] Draft Complaint at 1, Ex. B to Clark Aff.

[14] *Id.* at 2.

[15] Settlement Agreement at 4, Ex. 3 to Dailey Aff. (fax transmission date of signature page).

[16] *Id.* at 2-3. *See also* Compl. at 4. Specifically, the Agreement contained the following release:

> Except as otherwise set forth hereinafter, upon receipt by Samson from GEM of all amounts due pursuant to this Agreement, Samson will waive, release and forever discharge GEM and GEM's officers, directors, shareholders, employees, and agents from all claims, causes of action, losses, liabilities and/or damages, known or arising prior to this Agreement, arising out of, or relating to, Samson's performance of its sub-subcontract with GEM. Upon execution hereof, Samson releases and forever discharges GEM affiliated companies General

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 3 of 30

Samson's Alaskan connections.[17]   The Settlement Agreement also provided that "any action to interpret or enforce the terms of this Agreement shall be brought in the Superior Court of King County, Washington."[18]

Just before Samson executed the Settlement Agreement, it was provided with sworn declarations from Mr. Clark and Mr. Koziol as inducements to execute that document.[19]   Mr. Clark's declaration was signed on November 4, 2009 in California under penalty of perjury under California law and begins with the statement:

> 1. I am over the age of 18 years and am presently employed with GENERAL ENVIRONMENTAL MANAGEMENT, INC. A Nevada Corporation ("GEM").  I am the current Chief Financial Officer of GEM, and am familiar with the assets and obligations of GEM and its affiliates.[20]

Mr. Koziol's declaration was signed on November 5, 2009 in California, also under penalty of perjury under California law, and begins with a similar statement:

> 1. I am over the age of 18 years and am presently employed with GENERAL ENVIRONMENTAL MANAGEMENT, INC. A Nevada Corporation ("GEM").  I am the current Chief Executive Officer of GEM, and am familiar with the assets and obligations of GEM and its affiliates.[21]

---

Environmental Management, Inc., A Delaware Corporation, General Environmental Management of Rancho Cordova, LLC, and Island Environmental Services, Inc., A California Corporation, including their respective officers, directors, shareholders, employees, and agents.

[17] Settlement Agreement at 1 ("Samson is an oversea freight and transportation company operating between Seattle and various Alaskan ports . . .").

[18] *Id.* at 2.

[19] Compl. at 4.

[20] Decl. of Brett Clark Re Corporate Assets, Ex. 2 to Compl. [hereinafter Clark Decl.].

[21] Decl. of Timothy Koziol Re Corporate Assets, Ex. 1 to Compl. [hereinafter Koziol Decl.].

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 4 of 30

Both declarations express familiarity with "the assets and obligations of GEM and its affiliates" and contain the following identical language:

> 2. GEM has executed an Agreement with Samson Tug and Barge Company, Inc. ("Samson"), requiring the payment over time of the sums reflected therein, ("Agreement"). The Agreement includes the release of affiliated GEM companies upon execution thereof.
>
> 3. GEM has sufficient assets to assure repayment of the Samson obligation. The released affiliates have less asset value and income generation.
>
> 4. I understand that Samson is relying on the veracity of the representations contained herein as an inducement to execute the Agreement.[22]

On November 23, 2009, GEM Nevada filed a Form 10-Q with the Securities and Exchange Commission for the quarter ending September 30, 2009.[23] The Form 10-Q reflects that as of that date GEM Nevada had a total stockholders' deficiency of $13,616,790 and a net loss for the first nine months of 2009 of $12,510,521.[24] On November 25, 2009, GEM Nevada finalized an agreement to sell GEM Delaware and two of its other affiliates to a third party.[25] That agreement included a provision that GEM Nevada would fully assume GEM Delaware's obligation to Samson and obtain Samson's release of GEM Delaware.[26] The sale of GEM Delaware and its affiliates was

---

[22] Koziol Decl.; Clark Decl.

[23] Compl. at 6.

[24] *Id.*

[25] *Id.*

[26] *Id.* at 6-7.

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 5 of 30

completed on February 26, 2010 at a price of $14,000,000.[27]  GEM Nevada's Form 10-Q dated May 24, 2010 states that the net gain to GEM Nevada included a $765,000 bonus to be paid to senior management.[28]  By September 20, 2010, GEM Nevada had ceased doing business, according to an SEC filing dated September 20, 2010.[29]

In the months after the execution of the Settlement Agreement and the sworn declarations of Mr. Clark and Mr. Koziol, GEM Nevada made payments totaling $45,000 to Samson toward the amount due.  No payment has been made since March 2010.

On October 25, 2011, Samson filed the Complaint that initiated this action in Anchorage Superior Court, seeking the balance then due of over $600,000, including interest.[30]  The Complaint alleges that Mr. Clark and Mr. Koziol's November 2009 declarations fraudulently and negligently misrepresented both GEM Nevada's ability to repay the debt owed Samson, and the asset value and income generation potential of released affiliates, including GEM Delaware, so as to induce Samson to enter into the Settlement Agreement with GEM Nevada and release GEM Delaware.[31]

On December 28, 2011, Mr. Clark filed a Notice of Removal to this court under 28 U.S.C. § 1441, asserting diversity of citizenship and an amount in controversy in

---

[27] *Id.* at 7.  *But see* Supplemental Decl. of Brett Clark at 5-6 (Docket 20) (explaining that although the bonuses were earned, management did not pay them, choosing instead to reinvest the funds into the company).

[28] Compl. at 7.

[29] *Id.*

[30] *See Compl.*

[31] *Id.*

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 6 of 30

excess of $75,000.[32]  Mr. Clark filed this Motion to Dismiss on January 3, 2012.[33]  Mr. Koziol has not entered a formal appearance in this action, and default was entered against him on April 18, 2012.[34]

### DISCUSSION

Mr. Clark seeks dismissal of this action based on his assertion that this court lacks personal jurisdiction over both defendants.  Alternatively, he asserts that Alaska is the wrong or inconvenient venue for this action, and the case should be transferred to the federal district court in California, or  perhaps Washington.

### I.  Personal Jurisdiction

A federal district court may exercise personal jurisdiction over a non-resident defendant in a diversity action if jurisdiction is proper under the long-arm statute of the forum state and consistent with federal constitutional due process principles.[35]  Alaska's long-arm statute, AS § 09.05.015, permits the exercise of personal jurisdiction "to the maximum extent permitted by due process under the federal constitution."[36]  Although the state statute provides several specific grounds for jurisdiction,[37] it also contains a

---

[32] Notice of Removal (Docket 1).

[33] Docket 8.

[34] Clerk's Entry of Default (Docket 36).

[35] *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir. 1998).

[36] *Glover v. Western Air Lines, Inc.*, 745 P.2d 1365, 1367 (Alaska 1987) (citations omitted).

[37] For example, in *Cramer v. Wade*, the Alaska Supreme Court discussed its earlier recognition "that failing to pay monetary obligations to an Alaska creditor is an 'omission in this state' causing 'injury to property'" that warranted the exercise of personal jurisdiction under AS 09.05.015(a)(3).  985 P.2d 467, 470 (Alaska 1999) (citing *Kennecorp Mortgage & Equities, Inc. v. First National Bank of Fairbanks*, 685 P.2d 1232 (Alaska 1984)).  In *Cramer*, the Alaska

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 7 of 30

catch-all provision.[38]    Therefore, a court "need not determine whether [a] case fits perfectly" within the statute's enumerated grounds for jurisdiction, if the court "conclude[s] that due process permits the exercise of jurisdiction" over the defendant.[39] Thus, "the statutory and constitutional requirements merge into a single due process test,"[40] such that an analysis of Mr. Clark's jurisdictional argument under the federal Due Process Clause is dispositive.

The United States Supreme Court has held that "[a] court may subject a defendant to judgment only when the defendant has sufficient contacts with the sovereign 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'"[41]    Here, the parties agree that this court does not have general personal jurisdiction over the defendants for any and all disputes.    But they disagree whether this court may exercise specific personal jurisdiction over the defendants with respect to this particular case.

In *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, the Ninth Circuit discussed the applicable quantum of proof:

> In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper.    Where, as here, the defendant's motion is

Supreme Court found that Cramer's active encouragement and inducement of Wade, an Alaskan, to participate in a loan constituted sufficient contacts for personal jurisdiction.    *Id.* at 471.

[38] AS § 09.05.015(c).

[39] *Polar Supply Co., Inc. v. Steelmaster Indust., Inc.*, 127 P.3d 52 (Alaska 2005).

[40] *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1269 (9th Cir. 1981).

[41] *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2785 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 8 of 30

based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true. "[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit," but we resolve factual disputes in the plaintiff's favor.[42]

"As a general rule, the exercise of judicial power is not lawful unless the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"[43] Although courts "often use the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction … availment and direction are, in fact, two distinct concepts."[44] Purposeful availment is "most often used in suits sounding in contract," while purposeful direction "is most often used in suits sounding in tort."[45] As this case involves allegations of tortious conduct, it is appropriate to use a purposeful direction analysis to analyze whether Alaska has specific personal jurisdiction over the defendants for this particular action.

The Ninth Circuit has developed a three-part test (the "*Schwarzenegger* test") to determine when a court may, consistent with due process, exercise personal jurisdiction over a defendant with respect to specific alleged tortious conduct:

---

[42] 647 F.3d 1218, 1224 (9th Cir. 2011) (internal citations omitted), *cert. denied*, 132 S. Ct. 1101 (2012).

[43] *J. McIntyre Machinery, Ltd.,* 131 S. Ct. at 2785 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

[44] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003)).

[45] *Id.* (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995)). *See also Fiore v. Walden*, 657 F.3d 838, 848 (9th Cir. 2011).

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 9 of 30

(1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction *with the forum or resident thereof*; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
(2) the claim must be one which arises out of or relates to the defendant's *forum-related activities*; and
(3) the *exercise of jurisdiction* must comport with fair play and substantial justice, i.e. it *must be reasonable*.[46]

The plaintiff bears the burden of establishing the first two prongs of this test. If it does, then the burden shifts to the defendant to present a "compelling case that the exercise of jurisdiction would not be reasonable."[47] As discussed below, the Ninth Circuit has developed sub-parts to these prongs that apply to this analysis.

This court has found the Ninth Circuit's recent jurisdictional analysis in *Fiore v. Walden* to be particularly instructive.[48] The facts in that case were as follows: the plaintiffs, Fiore and Gipson, were professional gamblers traveling from Puerto Rico through Atlanta back to their homes in Nevada, with $97,000 of legal cash in their baggage.[49] This money was seized by DEA Agent Walden at the Atlanta airport when the plaintiffs were there changing planes. The plaintiffs alleged that they clearly conveyed to Walden that they were flying to, and resided in Nevada. The plaintiffs alleged that Walden provided a false probable cause affidavit to assist in bringing a forfeiture action to obtain the funds.[50] Approximately seven months later, the DEA

---

[46] *Fiore*, 657 F.3d at 845-46 (citing *Schwarzenegger*, 374 F.3d at 802) (emphasis in original).

[47] *Mavrix,* 647 F. 3d at 1228 (internal citations and quotations marks omitted).

[48] 657 F.3d 838.

[49] *Id.* at 842-43.

[50] *Id.* at 843-44.

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 10 of 30

returned the funds to the plaintiffs.[51] Fiore and Gipson brought a *Bivens* action in Nevada federal court against Walden for claims arising out of those events.[52] Walden moved to dismiss for lack of personal jurisdiction.[53] The district court granted the motion to dismiss, concluding that Nevada did not have personal jurisdiction over Walden because the search and seizure of the plaintiffs' funds took place in, "and was expressly aimed at, Georgia."[54] On appeal, the Ninth Circuit reversed, and after analyzing each of the prongs of the *Schwarzenegger* test as set forth herein, held that Nevada could exercise personal jurisdiction over Walden for that specific case.[55] With this background, this court turns to an analysis of whether Alaska has personal jurisdiction over the defendants for this case.

### A. Prong 1: Purposeful Direction

The first prong of the *Schwarzenegger* test requires a finding that the non-resident defendant "has purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof."[56] Purposeful direction is determined by the *Calder*-effects test, a three-part inquiry formulated by the Supreme Court in *Calder v. Jones*.[57] Under this test, a defendant is determined to have purposefully directed its

---

[51] *Id.* at 844.

[52] *Id.* at 844-45.

[53] *Id.* at 845.

[54] *Id.*

[55] *Id.* at 860. The Ninth Circuit also held that Nevada was an appropriate venue. *Id.* at 858-59.

[56] *Id.* at 845-46 (citing *Schwarzenegger*, 374 F.3d at 802) (emphasis in original).

[57] *Id.* at 848 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 11 of 30

activities toward the forum state if he has "[(a)] committed an intentional act, [(b)] expressly aimed at the forum state, [(c)] causing harm that the defendant knows is likely to be suffered in the forum state."[58] "Intentional torts, in particular, can support personal jurisdiction over a nonresident defendant who has no other forum contacts."[59]

### i. Intentional act.

In the context of this test, an intentional act "refer[s] to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act."[60] In *Fiore*, the Ninth Circuit found that the alleged acts of "[s]ubmitting a false and misleading probable cause affidavit and referring the case for forfeiture proceedings in the absence of probable cause" were intentional.[61] Similarly, in this case, the defendants acted intentionally when they allegedly authored false or misleading declarations.

### ii. Expressly aimed at the forum state.

The Ninth Circuit has, as a general rule, "held the express aiming requirement satisfied" when there is "'individual targeting' of the forum residents—actions taken outside the forum state for the purpose of affecting a particular forum resident or a

---

[58] *Id.* (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)).

[59] *Id.* (citing *Calder*, 465 U.S. at 790). *See also J. McIntyre Machinery, Ltd.*, 131 S. Ct. at 2787 ("in some cases, as with an intentional tort, the defendant might well fall within the State's authority by reason of his attempt to obstruct its laws.").

[60] *Id.* at 849 (citing *Schwarzenegger*, 374 F.3d at 806).

[61] *Id.*

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 12 of 30

person with strong forum connections[.]"[62]  The mere foreseeability of an impact in the forum state is not enough; the defendant must target its "intended impact … at a known individual who has a substantial, ongoing connection to the forum."[63]  In *Fiore*, the court determined that this requirement had been satisfied: "Walden expressly aimed his actions [in Atlanta] at people and property he knew from the outset were *not* local."[64]  And the court there found the record to "indicate that at the time the assertedly false affidavit was composed and filed, Walden recognized that the plaintiffs had significant connections to Nevada, particularly with respect to the funds for which forfeiture was being sought."[65]  The Ninth Circuit noted that activities can be expressly aimed at a forum state without the defendant ever going to that state, citing to its precedents that "firmly establishe[d] that if a defendant is alleged to have defrauded or similarly schemed against someone with substantial ties to a forum, the 'expressly aimed' factor is met, even if all the defrauding activities occur outside the forum."[66]  The court described Walden as allegedly acting "falsely and with misleading omissions" based on representations in a probable cause affidavit regarding funds belonging to "Fiore and Gipson, whom he knew had a significant connection to Nevada."[67]  The Ninth Circuit

---

[62] *Id.* (citing *Brayton Purcell*, 606 F.3d at 1129–31; *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1157 (9th Cir. 2006); *Dole Food Co.*, 303 F.3d at 1111; *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)).

[63] *Id.* (emphasis omitted).

[64] *Id.* at 850 (emphasis in original).

[65] *Id.* at 851.

[66] *Id.* at 852.

[67] *Id.* at 853.

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 13 of 30

found that Walden knew that his actions "would have their consequences felt in Nevada."[68]

Consistent with the Ninth Circuit's analysis in *Fiore* and its other case law, the facts here readily demonstrate that the defendants' conduct was expressly aimed at Alaska. The defendants here knew that the target of their declarations was an Alaska corporation, and knew and intended that Samson would feel the effects of their actions in Alaska.

    *iii.*    *Foreseeable harm in the forum state.*

This "element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum … If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state."[69] Here, the defendants knew that, and intended for, their declarations to be relied upon by Samson in Alaska. Thus, the foreseeability of harm in Alaska has been clearly demonstrated.

As each of the three prongs of the *Calder*-effects test is satisfied, this court finds that the defendants purposefully directed their activities toward Alaska when they signed their November 2009 declarations and transmitted them to Samson.

## B. Prong 2: Forum-Related Conduct

The second prong of the *Schwarzenegger* test considers whether the claim arises out of or relates to the defendant's forum-related activities. The Ninth Circuit

---

[68] *Id.*

[69] *Id.* (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006)).

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 14 of 30

uses a "'but-for test' to determine forum-related conduct," such that the plaintiff must show that, but for the defendant's actions, it would not have suffered the injury in the forum state.[70]

In *Fiore*, the Ninth Circuit found this prong "easily met" because the plaintiffs demonstrated that "they would not have suffered the alleged injuries in Nevada 'but for' Walden's false probable cause affidavit and attempt to facilitate a forfeiture prosecution,"[71] even though the affidavit was signed and the forfeiture was attempted in Atlanta, Georgia.

Here, Samson alleges that it relied on the defendants' declarations when deciding to execute the Settlement Agreement with GEM Nevada and release GEM Delaware. Drawing "reasonable inferences" in Samson's favor,[72] this court finds that, but for the defendants' declarations, Samson would not have executed the Settlement Agreement and would not have suffered injury in Alaska. Accordingly, the forum-related conduct prong of the *Schwarzenegger* test is easily met.

### C. Prong 3: Reasonableness Determination

The final prong of the *Schwarzenegger* test places the burden on the defendant to "'present[] a compelling case' that the exercise of personal jurisdiction would not be

---

[70] *Id.* at 854 (citing *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007)).

[71] *Id.*

[72] *Id.* at 847.

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 15 of 30

reasonable."[73]  In making this determination, the court is to balance the following seven factors, each of which is discussed in turn below:

> [(i)] the extent of the defendants' purposeful interjection into the forum state's affairs; [(ii)] the burden on the defendant of defending in the forum; [(iii)] the extent of conflict with the sovereignty of the defendants' state; [(iv)] the forum state's interest in adjudicating the dispute; [(v)] the most efficient judicial resolution of the controversy; [(vi)] the importance of the forum to the plaintiff's interest in convenient and effective relief; and [(vii)] the existence of an alternative forum.[74]

> i.  *Extent of purposeful interjection into the affairs of the forum state.*

In *Fiore*, the Ninth Circuit focused its analysis of this factor on Walden's awareness of Fiore and Gipson's connections to Nevada at the time he prepared the allegedly false probable cause affidavit in Georgia.  The court concluded that even though Walden "never stepped foot in Nevada," he knew of the plaintiffs' connections to that state at that time, and thus "was necessarily aware that his actions would … have their principal impact outside of Georgia."[75]

Here, the defendants were well aware of Samson's Alaska connection when they signed the declarations, and in fact they expressly intended their declarations to have an impact on Samson in Alaska.  This court finds that the defendants' actions constituted a significant purposeful interjection into Alaskan affairs, and weighs strongly in favor of the reasonableness of Alaska's exercise of personal jurisdiction over them.

---

[73] *Id.* at 854 (citing *Menken*, 503 F.3d at 1057).

[74] *Id.* (citing *Menken*, 503 F.3d at 1058).

[75] *Id.* at 855.

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 16 of 30

ii.   *Burden of defending in the forum.*

Although "[m]odern means of communication and transportation have tended to diminish the burden of defense of a lawsuit in a distant forum,"[76] the Ninth Circuit remains sensitive to the expense and inconvenience that litigating in a distant forum can place on a defendant.  In *Fiore*, the Ninth Circuit noted that Walden, as a federal law enforcement employee, was being defended and indemnified by the government, so the burden on him to litigate in Nevada was minimized.[77]  As such, the Ninth Circuit found that this factor did not weigh in favor of Walden, although the court indicated that it might have found differently "[w]ere Walden a local small business person[.]"[78]

Unlike the defendant in *Fiore*, the defendants here are private individuals.  This court recognizes that "many of the inconvenience burdens in this case are symmetrical[,]"[79] as it would be burdensome for Samson, a local business, to litigate outside Alaska.  However, "[t]he law of personal jurisdiction … is asymmetrical," and is primarily concerned with "the burden on a defendant."[80]  This court finds that it would be burdensome for the defendants to litigate in Alaska, such that this factor weighs against Alaska's exercise of personal jurisdiction over the defendants in this case.

---

[76] *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292-93 (1980); *Hanson v. Denckla*, 357 U.S. 235, 251 (1958); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222-23 (1957)).

[77] *Fiore*, 657 F.3d at 855.

[78] *Id.*

[79] *Marina Salina Cruz*, 649 F.2d at 1272 (noting that burden of requiring Mexico-based shipyard to defend in Alaska was symmetrical to burden of requiring boat owner and insurance company to defend in Mexico).

[80] *Id.* (citing *World-Wide Volkswagen*, 444 U.S. at 292).

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 17 of 30

*iii.    Extent of conflict with sovereignty of defendants' state.*

The defendants' home state is California, and the declarations at issue were signed under penalty of perjury under California law.  Samson, an Alaska corporation, suffered the alleged harm in Alaska.  To the extent California has a sovereign interest in punishing its citizens for perjury, that interest can be furthered in criminal prosecutions in that state without conflicting with this civil proceeding and Alaska's distinct interest in protecting its citizens from tortious conduct.  To analogize to the Ninth Circuit's analysis in *Fiore*: "[California] has no interest in protecting [Samson's] interests," because Samson has "no connection to [California]."[81]   As there is no serious conflict with California's sovereignty, this factor weighs in favor of Alaska's exercise of personal jurisdiction over the defendants in this case.

*iv.    Interest of forum state in adjudicating the dispute.*

States have "a strong interest in providing an effective means of redress for [their] residents who are tortiously injured."[82]   Samson is an Alaska corporation which was allegedly harmed by the defendants' tortious conduct.  Alaska has a clear interest in this dispute.   Accordingly, this factor weighs strongly in favor of finding personal jurisdiction in Alaska.

---

[81] *Fiore*, 657 F.3d at 856.

[82] *Ibrahim v. Dept. of Homeland Sec.*, 538 F.3d 1250, 1259 (9th Cir. 2008) (citing *Ziegler v. Indian River County*, 64 F.3d 470, 475 (9th Cir. 1995)).

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 18 of 30

*v.    Most efficient resolution of the controversy.*

The efficiency of a given forum depends "primarily on the location of witnesses and evidence."[83]   In *Fiore*, the court found this factor evenly weighted, as the documentation and witnesses were evenly split between the plaintiffs' and the defendants' preferred court locations.  Here, Mr. Clark's sworn statement asserts that all potential witnesses for the defense reside in California.[84]   Samson asserts that "there are multiple witnesses in Alaska necessary for trial."[85]   This court finds that, at this initial stage of litigation and based on the current record, there is insufficient evidence to accord any weight to this factor.

*vi.    Importance of forum to plaintiff's convenient and effective relief.*

This factor, which "generally is not given much weight in this circuit[,]"[86] tips in favor of Alaska, as if Samson is entitled to relief, it would be more conveniently and effectively obtained in its home state, where its operations are based and its injuries were allegedly incurred.

*vii.    Existence of an alternative forum.*

California is an alternative forum, in that this case could have been brought there. This factor weighs against the exercise of personal jurisdiction over the defendants in Alaska.

---

[83] *Fiore*, 657 F.3d at 856 (citing *Menken*, 503 F.3d at 1060-61).

[84] Clark Aff. at 5-8, *supra* n. 12.

[85] Opp. to Mot. at 22 (Docket 14).  Samson also notes that prior to discovery, there is no way to know which of the witnesses listed by Mr. Clark I would actually be called to testify at trial—a point which applies with equal force to both parties at this point in the litigation.

[86] *Fiore*, 657 F.3d at 856-57 (citing *Dole Food*, 303 F.3d at 1116).

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 19 of 30

Overall, the seven-factor balancing test weighs decidedly in favor of Alaska's exercise of personal jurisdiction over the defendants in this case. Mr. Clark has not made a "compelling case" that this court's exercise of personal jurisdiction would be unreasonable. Based on this court's analysis of the three prongs of the *Schwarzenegger* test, this court finds that Alaska's exercise of personal jurisdiction over the defendants comports with constitutional due process.

### D. Corporate Shield Doctrine

Mr. Clark cites the Ninth Circuit's decision in *Forsythe v. Overmyer* to support his argument that because he and Mr. Koziol had contact with Alaska only in their capacities as corporate officers of GEM, they are protected from the exercise of personal jurisdiction by the corporate, or fiduciary, shield doctrine.[87] As a preliminary matter, the declaration of each defendant contains no indication that it was signed solely in the capacity of a corporate officer. With all reasonable inferences drawn for the plaintiff on this motion, Mr. Clark's argument fails on that basis alone.

Moreover, the corporate shield doctrine is inapplicable. Mr. Clark argues that Ninth Circuit precedent is the relevant law and that Samson's state-law based argument is erroneous.[88] However, within the Ninth Circuit, the corporate shield doctrine does not require a constitutional inquiry, and is therefore controlled by state law.[89] Under Alaska

---

[87] 576 F.2d 779, 783-84 (9th Cir. 1978) ("[A] corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum.") (citing *Chem Lab Prods., Inc. v. Stepanek*, 554 F.2d 371 (9th Cir. 1977)).

[88] Opp. to Mot. to Strike at 2, n.1 (Docket 23).

[89] *Kubley v. Whetstone*, 2004 WL 2827716, *6 (D. Alaska Dec. 3, 2004) (citing *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 521 (9th Cir. 1989)).

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 20 of 30

law, "the 'fiduciary shield' doctrine does not insulate an officer from the exercise of personal jurisdiction over him."[90]   Mr. Clark and Mr. Koziol therefore cannot obtain protection from the doctrine.

For the foregoing reasons, Mr. Clark's motion to dismiss this action for lack of personal jurisdiction is denied.

## II.    Venue

Mr. Clark's motion challenges venue in Alaska on two alternative grounds: (1) that Alaska is a statutorily improper venue under 28 U.S.C. § 1391(a) and (2) even if venue in Alaska is statutorily permitted, Alaska is an inconvenient forum such that the court should transfer the case to the Central District of California, or perhaps Washington.

When considering a defendant's assertion of improper venue, the court may consider facts outside of the pleadings, with the burden on the plaintiff to demonstrate that venue properly lies in its chosen state.[91]   With respect to a motion seeking to transfer venue pursuant to 28 U.S.C. § 1404(a), the court may also consider facts outside the pleadings, but the burden is on the party seeking to transfer the case to

---

[90] *Id.* (citing *Cramer v. Wade*, 985 P.2d 467, 472 (Alaska 1999)).  Mr. Clark argues that the relevant language in *Cramer* is merely dicta, or at best an alternative opinion, as the Alaska Supreme Court specified that Cramer was acting to further his own interests, not those of his employer.  Opp. to Mot. to Strike at 2, n.1.  However, the court expressly held that "it is entirely beside the point whether Cramer acted for himself or solely in his corporate capacity," *Cramer*, 985 P.2d at 472, adding, "that even if [Cramer] could be deemed to have acted exclusively in his corporate capacity, due process would not shield him from suit in his individual capacity."  *Id. See also Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1063 n. 11 (Alaska 2005) ("The corporate form does not shield corporate officers or employees who commit torts on behalf of their employer from personal liability.").

[91] *Argueta v. Banco Mexicano*, 87 F.3d 320, 324 (9th Cir. 1996).

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 21 of 30

"make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."[92]

### A. Is Alaska an improper venue for this action?

28 U.S.C. § 1391(a) is the venue statute applicable to diversity cases.[93]  That statute provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

When a court determines that it lacks venue, 28 U.S.C. § 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Clearly, Alaska does not have venue for this action under either subsection (1) or subsection (3) of the venue statute.  At issue is whether venue in Alaska lies under subsection (2), and specifically, whether "a substantial part of the events or omissions giving rise to [Samson's] claim occurred" in Alaska. Under a "substantial part" venue analysis, "even if other material events occurred elsewhere," venue in a certain forum

---

[92] *Gherebi v. Bush*, 352 F. 3d 1278, 1302 (9th Cir. 2003).  *See also Northern Acceptance Trust 1065 v. Gray*, 423 F. 2d 653, 655 (9th Cir. 1970) (according "substantial weight to [plaintiff's] choice of forum.").

[93] In December 2011, the Federal Courts Jurisdiction and Venue Clarification Act of 2011 was enacted, modifying the language of the venue statute.  The Act, however, applies only to suits filed after its effective date.  As this action was filed prior to the Act's effective date of January 6, 2011, the previous version of the statute applies.

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 22 of 30

can be proper if "significant events or omissions material to the plaintiff's claim …
occurred in the district in question."[94]

In *Rodriguez v. California Highway Patrol*, the Northern District of California
found that because at least some of the incidents of alleged racial profiling that formed
the basis of the plaintiffs' claims had occurred in its district, venue was proper.[95]   The
court explained that a "majority of events" need not "have occurred in the district where
suit is filed[,]" nor must "events in that district predominate."[96]   Similarly, in *Xcentric
Ventures LLC v. Borodkin*, the Arizona District Court held that the defendants' travel to
Arizona for settlement discussions and placing of phone calls to the plaintiff's place of
business in Arizona constituted a "substantial part of the events giving rise" to the
plaintiff's tort claims, so as to permit venue in that state, even though the "principal
event giving rise" to the claims had occurred in California.[97]

The Ninth Circuit has recognized that the location of the injury in tort cases is a
relevant factor in determining whether there is proper venue under a "substantial part"
analysis.[98]   "The fact that at least one of the harms suffered" was felt in a particular

---

[94] *Xcentric Ventures LLC v. Borodkin*, 2012 WL 692976, *7 (D. Ariz. Mar. 1, 2012) (citing *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 357 (2d Cir. 2005)) (emphasis removed).

[95] *Rodriguez v. California Hwy. Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000).

[96] *Id.* (citing *Sidco Indus. Inc. v. Wimar Tahoe Corp.*, 768 F.Supp. 1343, 1346 (D.Or. 1991)).

[97] *Xcentric Ventures*, 2012 WL 692976 at *8.  The court had already determined that venue was proper in Arizona under a substantial part analysis because Arizona was the "locus of the injury," but additionally found that these actions constituted a substantial part of the events.  *Id.*

[98] *Fiore*, 657 F.3d at 859 (citing *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001)).  *See also Xcentric Ventures*, 2012 WL 692976 at *7.

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 23 of 30

forum may make venue proper, even when the injury was solely economic.[99]  In *Myers v. Bennett Law Offices*, the plaintiffs were Nevada residents who brought suit in Nevada against the defendants, alleging that the defendants had violated the Fair Credit Reporting Act by ordering credit reports on them for improper purposes.[100]  The defendants, Utah residents, asserted improper venue.[101]  The Ninth Circuit found that venue in Nevada was proper because the plaintiffs had felt "at least one of the 'harms'" (which it analogized to the tort of invasion of privacy) in Nevada, such that "a substantial part of the events or omissions giving rise to the claim" had occurred in that state.[102]  Similarly, in *Fiore v. Walden*, the Ninth Circuit found venue in Nevada was proper. Citing the language from *Myers* that "at least one of the harms"[103] was suffered in the forum state, the court found "[a]ll the economic injuries suffered by Fiore and Gipson were realized in Nevada, including their loss of use and interest on the funds[.]"[104]

Here, Samson alleges that because it was fraudulently induced to enter into a settlement agreement with an entity that was unable to meet its obligations, it suffered significant economic injury.  Like Fiore and Gipson, Samson alleges that it has suffered the "loss of use and interest on [its] funds."[105]  As Samson is a Sitka-based Alaskan

---

[99] *Id.* (internal quotation marks omitted) (citing *Myers*, 238 F.3d at 1076).

[100] 238 F.3d 1068.

[101] *Id.* at 1071.

[102] *Id.* at 1075-76.

[103] *Fiore*, 657 F.3d at 859 (citing *Myers*, 238 F.3d at 1076).

[104] *Id.* at 859.

[105] *Id.* at 859.

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 24 of 30

corporation, the economic consequences of this injury were felt in Alaska. Moreover, there were additional events connected with Alaska that gave rise to this claim – perhaps most notably the fact that the underlying debt arose from the shipment of materials out of Alaska.[106] This court finds that a substantial part of the events giving rise to Samson's claim occurred in Alaska. Accordingly, the motion to dismiss on the basis of improper venue is denied.

## B. Is Alaska an inconvenient venue?

A defendant may seek to demonstrate that the case ought to be transferred to a more convenient forum, if that forum is one where the action may also originally have been brought. 28 U.S.C. § 1404(a) governs change of venue for the purpose of convenience:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

"[W]hether transfer or dismissal is appropriate 'rests within the sound discretion of the district court.'"[107] To succeed on such a motion, "the defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."[108]

Mr. Clark asserts that Alaska is an inconvenient venue and that the court should transfer this action to the Central District of California, where venue is also proper under

---

[106] In addition, the defendants had ongoing communications with Samson in Alaska.

[107] *Sixty-Two First Street, LLC v. Capital Source Finance LLC*, 2011 WL 2182915 *3 (June 6, 2011) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983); *Cook v. Fox*, 537 F.2d 370, 371 (9th Cir. 1976)). *Cf. Norwood v. Kirkpatrick*, 349 U.S. 29, 31-32 (1955) (district court has broad discretion to transfer under 28 U.S.C. § 1404(a)).

[108] *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 25 of 30

28 U.S.C. § 1391(a), as it is the district in which both defendants reside.[109]

The Ninth Circuit uses a nonexclusive ten-factor analysis to determine whether transfer of an action is warranted on the grounds of inconvenience:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the fora; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two fora; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) whether a forum selection clause is present; and (10) the relevant public policy of the forum state, if any.[110]

Additionally, a district court may also consider any other factors that affect the ease, expense, or expeditiousness of trial.[111]

### i. *Location of negotiation and execution of relevant agreements.*

The defendants' declarations, while not agreements per se, are at the core of this action and were executed in California. The record contains no information on where the original shipping contract between Samson and GEM was negotiated or executed. The Settlement Agreement was signed by GEM Nevada in California.[112] Samson has not indicated where it signed the Agreement, but this court finds it reasonable to infer

---

[109] Mr. Clark requests, in the alternative, that the court transfer this action to Washington, Mot. at 3, but has not made an argument for Washington as a more convenient venue.

[110] *Kubley*, 2004 WL 2827716 at *10 (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000)).

[111] *Cf., e.g., Grubs v. Consolidated Freightways, Inc.*, 189 F. Supp 404, 410 (D. Montana 1960) (inconvenience of counsel not a relevant consideration); *Oriska Insurance Co. v. Power P.E.O., Inc.*, 317 F. Supp 2d 161, 166 (N.D.N.Y. 2004) (disparity between means of the parties relevant to venue determinations).

[112] Clark Aff. at 3, *supra* n. 12.

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 26 of 30

that Samson signed it in Alaska, as the final paragraph of the Agreement provides that it can be executed by counterparts, including facsimile transmission, and the copy attached to Ms. Dailey's affidavit bears a fax header with an Alaskan area code.[113] Given that the declarations were signed in California, this factor supports the transfer of venue to California.

  *ii. State most familiar with governing law.*

 "A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."[114] If this diversity case were transferred on grounds of inconvenience, the transferee court would apply the same law as the court in Alaska.[115] With respect to the plaintiffs' claims of fraud and misrepresentation, Alaska law would presumably apply, and a court in Alaska would be most familiar with that governing law. Arguably, however, the choice of law clause in the Settlement Agreement might warrant application of Washington law on some issues. And issues regarding the meaning of the sworn declarations might apply California law. On balance, this court finds this factor is neutral.

  *iii. The plaintiff's choice of forum.*

 A plaintiff's choice of forum is accorded "a strong presumption" in its favor.[116] As

---

[113] Settlement Agreement at 4, *supra* n. 15.

[114] WRIGHT & MILLER, FED. PRAC. & P. § 3846 (3d ed.) (citing *Van Dusen v. Barrack*, 84 S.Ct. 805, 821 (1964)).

[115] *See id.* ("it is now well settled . . . that after a Section 1404(a) transfer on a defendant's motion of a case that had been brought properly in the transferor court, the transferee court will apply the law that would have been applied in the transferor court under the conflicts-of-laws rules of the state from which the action was transferred.").

[116] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 265-66 (1982).

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 27 of 30

Samson filed suit in Alaska, this factor tips strongly toward venue remaining in Alaska.

iv.    *The parties' contacts with the fora.*

Samson is an Alaskan corporation with extensive contacts with Alaska.  It has had very limited contact with California.  There is no indication in the record that its shipping operations outside of Alaska have extended beyond Seattle, Washington.  The defendants' contacts with California are extensive, as it is their state of residence.  Conversely, their contacts with Alaska appear to have been quite limited except with respect to their communications with Samson relative to this cause of action.  On balance, this factor weighs slightly toward venue remaining in Alaska.

v.    *Contacts relating to the cause of action in the chosen forum.*

Samson's contacts in Alaska relating to its cause of action are extensive.  And the crucial event of Samson's cause of action is the defendants' transmittal of their allegedly fraudulent declarations to Samson, an Alaska corporation.   This factor therefore weighs toward venue remaining in Alaska.

vi.    *The differences in the cost of litigation.*

Either Samson would have to bear the cost of litigating outside of Alaska, or the defendants would have to bear the cost of litigation in Alaska.  As each forum would inconvenience one of the parties, this factor does not tip in either direction.

vii.    *Availability of compulsory process to compel attendance of witnesses.*

As in the previous factor, this factor could present issues in either forum, but at this stage of the proceeding it has not been demonstrated to weigh in either direction.

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 28 of 30

*viii.    Ease of access to sources of proof.*

Again, each forum would present difficulties for one of the parties, as Samson's sources of proof would be primarily in Alaska, while the defendants' would be primarily in California, and thus this factor does not tip in either direction.

*ix.    Existence of a forum selection clause.*

The Settlement Agreement contains a forum selection clause designating the Western District of Washington as the chosen forum for disputes between GEM Nevada and Samson related to that agreement.  The clause provides:

> 8. This Agreement shall be construed and interpreted according to the laws of the State of Washington.  The Parties agree that any action to interpret or enforce the terms of this Agreement shall be brought in the Superior Court of King County, Washington.  The prevailing party in any such action shall be entitled to the payment of the reasonable costs and attorney's fees incurred therein, inclusive of any appeal.[117]

Mr. Clark has suggested, as an alternative to California, that this action be transferred to Washington,[118] but did not develop an argument in support of this proposal.  Samson is the only party in this action which was also a party to the Settlement Agreement and is not seeking in this action to interpret or enforce the terms of the Settlement Agreement against GEM Nevada.  As Mr. Clark was not a party to the Settlement Agreement, he cannot rely on it to change venue to Washington.  Rather, this court finds that the clause has little, if any, bearing on the venue inquiry.

---

[117] Settlement Agreement at 2.

[118] Mot. at 3.

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 29 of 30

*x.   Relevant public policy of the forum.*

This court finds that Alaska's interest in protecting its citizens from fraud and misrepresentation is more compelling than any public policy that could be attributed to Washington or California with respect to this case. This factor therefore tips decidedly in Alaska's favor.

As the majority of the relevant factors tip toward venue remaining in Alaska, including the plaintiff's choice of forum, this court finds that transfer of this action from Alaska is not warranted on grounds of inconvenience. Mr. Clark's alternative motion to transfer venue is therefore denied.[119]

### *CONCLUSION*

For the foregoing reasons, Mr. Clark's Motion to Dismiss is DENIED in its entirety.

Dated at Anchorage, Alaska this 23rd day of April, 2012.

/s/ Sharon L. Gleason
United States District Judge

---

[119] However, the present denial of the motion to transfer venue is not necessarily dispositive of a subsequent motion to transfer, if the defendants present different facts demonstrating greater inconvenience at a later date.  *See* WRIGHT & MILLER, 15 FED. PRAC. & P. § 3844 (3d ed.) ("Section 1404(a) sets no limit on the time by which a motion to transfer may be made. … In addition, even though a motion for [Section 1404(a)] transfer has been denied once, the district judge is not precluded from hearing and considering a subsequent motion, if made, for transfer on the basis of the facts then presented.").

3:11-cv-00247-SLG, *Samson Tug and Barge Co. v. Koziol*
Order Denying Defendant Clark's Motion to Dismiss
Page 30 of 30